IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF PIERCE

| | |
|---|---|
| PATRICIA ROGERS,<br><br>    Plaintiff,<br><br>vs.<br><br>LISA MARIE EYER; JEFFERY ALAN EYER; SAMMIE LEWIS and TREVOR LEWIS, a married couple; TSL HANDLING AND MULTIMEDIA,<br><br>    Defendants. | Case No.: 19-2-05359-9<br><br>**COMPLAINT** |

Plaintiff **PATRICIA ROGERS**, through attorney of record **ADAM P. KARP** of ANIMAL LAW OFFICES, alleges:

## JURISDICTION, PARTIES, AND VENUE

**1.**  This court has subject-matter jurisdiction over this action.

**2.**  Plaintiff **PATRICIA ROGERS** is a single woman residing in Oregon City, Ore., and the owner-guardian of **ICY**, an intact, seven-year-old, purebred Australian Shepherd.

**3.**  Defendants **LISA MARIE EYER** and **JEFFERY ALAN EYER** are a married couple who reside at 9812 339th St. S., Roy, Wash. ("9812 Premises"). At the time of the events complained of, Lisa Marie Eyer was known as Lisa Marie Watkins ("Watkins").

**4.**  Defendants **SAMMIE LEWIS** and **TREVOR LEWIS** are a married couple residing at 9811 339th St., Roy, Wash. ("9811 Premises"), and next-door neighbors to the Eyers.

COMPLAINT - 1

The Lewises own and operate Defendant **TSL HANDLING AND MULTIMEDIA ("TSL")**.

5. This court has personal jurisdiction over all named defendants.

6. Venue is proper.

## GENERAL ALLEGATIONS

7. Icy is a blue merle with white and copper trim, intact, five-year-old, female Australian Shepherd, registered with the American Kennel Club with registration number #DN35521602. She was highly-trained and obedient, Champion-titled with the AKC, ASCA, Canadian Kennel Club, and IABCA, a Multi-Best in Show Winner in AKC and IABCA, and has no vicious propensities whatsoever.

8. Rogers hired TSL and Sammie Lewis, who held herself out as a professional dog handler, to handle Icy at conformation events and board her at the 9811 Premises while being campaigned almost every weekend between Summer 2015 and April 2017. Rogers estimates having paid the Lewises over $100,000 in handling fees and expenses.

9. The Lewises and TSL were contracted to board and handle Icy on April 26, 2017.

10. As an inducement to do business with the Lewises and TSL, Sammie assured Rogers that she had liability insurance to cover any harm to Icy. Sammie never once informed Rogers that she could not lawfully keep Icy at her residence, and lacked proper licensing and permits to do so. Had Rogers known this information prior to April 26, 2017, she would not have contracted with the Lewises and TSL, and would never have permitted Icy to be kept at the 9811 Premises.

11. The 9811 Premises are part of the White Water Estates, a gated community with a homeowners association.

12. The 9811 Premises is unfenced and ungated, allowing for the entry of unleashed dogs.

13. Watkins and Eyer rent their property from Brian and Terri Vining.

**COMPLAINT - 2**

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

14. Watkins and Eyer regularly opened the gate to the 9812 Premises to move vehicles in and out of the driveway, leaving three (3) dogs ("9812 Dogs") they co-owned, co-kept, and/or co-harbored to roam freely on and off the 9812 Premises.

15. The 9812 Dogs would repeatedly and aggressively charge the fence separating the 9811 and 9812 Premises whenever the Lewises would be outside or retrieve their mail. One of those dogs was a pit bull terrier-type dog named Thor ("Thor").

16. On April 26, 2017 at about 4:00 p.m., Sammie let Icy outside onto the Lewises' wraparound porch in preparation for treadmill training with the Lewises' Chinese Crested named Merigold.

17. Around this time, on information and belief, Watkins had arrived at the 9811 Premises, opened the gate, allowing Thor to leave the premises.

18. Meanwhile, Sammie allowed Icy and Merigold to remain outside, unleashed and unsupervised.

19. Icy was savagely attacked on the 9812 Premises by the trespassing Thor without provocation by Icy.

20. On information and belief, Eyer co-owned, co-kept, and/or co-harbored Thor.

21. As Sammie stepped from the side door into her living room, out her front window she saw Watkins walking fast past the Lewises' front door. Sammie watched Watkins walk on the inside of Sammie's car parked in the driveway and head directly for the right, back side of the Lewises' home.

22. Sammie stepped into the main hallway and again saw Watkins through the open, front door. She observed Watkins forcefully dragging Thor by his collar away from the far, right side of the Lewises' home toward the 9812 Premises gate.

23. Sammie yelled to Watkins as she passed her front door, asking if Watkins's dog had been loose. Watkins did not answer.

**COMPLAINT - 3**

14. Watkins and Eyer regularly opened the gate to the 9812 Premises to move vehicles in and out of the driveway, leaving three (3) dogs ("9812 Dogs") they co-owned, co-kept, and/or co-harbored to roam freely on and off the 9812 Premises.

15. The 9812 Dogs would repeatedly and aggressively charge the fence separating the 9811 and 9812 Premises whenever the Lewises would be outside or retrieve their mail. One of those dogs was a pit bull terrier-type dog named Thor ("Thor").

16. On April 26, 2017 at about 4:00 p.m., Sammie let Icy outside onto the Lewises' wraparound porch in preparation for treadmill training with the Lewises' Chinese Crested named Merigold.

17. Around this time, on information and belief, Watkins had arrived at the 9811 Premises, opened the gate, allowing Thor to leave the premises.

18. Meanwhile, Sammie allowed Icy and Merigold to remain outside, unleashed and unsupervised.

19. Icy was savagely attacked on the 9812 Premises by the trespassing Thor without provocation by Icy.

20. On information and belief, Eyer co-owned, co-kept, and/or co-harbored Thor.

21. As Sammie stepped from the side door into her living room, out her front window she saw Watkins walking fast past the Lewises' front door. Sammie watched Watkins walk on the inside of Sammie's car parked in the driveway and head directly for the right, back side of the Lewises' home.

22. Sammie stepped into the main hallway and again saw Watkins through the open, front door. She observed Watkins forcefully dragging Thor by his collar away from the far, right side of the Lewises' home toward the 9812 Premises gate.

23. Sammie yelled to Watkins as she passed her front door, asking if Watkins's dog had been loose. Watkins did not answer.

COMPLAINT - 3

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

24. Sammie then saw Icy walk from the wraparound porch to her at the front door area. Sammie observed that Icy had been badly injured, with bites and blood on her face, and slime along the side of her body.

25. Sammie yelled to Watkins to look what her dog did to Icy. Watkins continued dragging Thor away and yelled at Sammie, saying all he did was urinate on the Lewises' house and that Thor did not attack Icy.

26. Watkins then put Thor behind the fence on the 9812 Premises and returned to Sammie's front door to observe Icy, making the comment that she looked really bad. Watkins then walked away.

27. Icy required sedation and emergency veterinary treatment for tear and bite wounds to the top, right, and left side of her face, requiring sutures, as well as in her nose. She sustained deep wounds under her chin and on her jaw. She suffered scrapes and bruising along the ridge of her nose, gumline, the entire length of her tongue, and underjaw. Icy required several follow-up veterinary appointments.

28. In addition to physical injury, Icy sustained psychological injury that affected her ability to be touched, handled, and to perform at future competitions.

29. Shortly before the attack, Sammie had been exercising her other dogs at the back, right side of her home. The only dogs Sammie allegedly saw prior to letting Icy out were the 9812 Dogs barking aggressively at the aforementioned fenceline.

30. In the alternative that a factfinder concludes that Thor did not attack Icy, then Rogers alleges that one of the Lewises' personal dogs (or client dogs) did so.

31. On April 26, 2017, on information and belief, Sammie was an AKC registered professional dog handler bound by the AKC Standard for Handler Professionalism.

32. On information and belief, Sammie was also bound by the AKC Code of Ethics for Registered Handlers.

COMPLAINT - 4

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

33. One such Standard states, "Safety, security, and well-being of the dogs is to be placed above all other business considerations."

34. One such Code states, "I agree to: Ensure that the welfare of the dogs in my care is a priority, not only at dog shows but at home and on the road. Their well-being, security, and safety is to be placed above all other business considerations. The ultimate responsibility for the dogs cannot be transferred to assistants or others."

35. Prior to releasing Icy unsupervised into an uncontrolled environment without protection by a fence[1] and gate, Sammie knew and should have known that the 9812 Dogs were neither obedient nor of placid temperament.

36. The 9812 and 9811 Premises are both within the White Water Estates, a homeowners association created in 1989. Applicable to the Defendants' dogs was Article III, § 2 of the Declaration of Protective Covenants, Conditions, and Restrictions ("CCR"), which states, "Except as provided in this paragraph, no animals, livestock or poultry of any kind other than house pets shall be kept or maintained on any part of the property, provided that they do not cause or create a nuisance or unreasonable noise or disturbance."

37. The Lewises ran, and, on information and belief, continue to run, their dog boarding and handling business from the 9811 Premises without a business license required by the State of Washington.

38. The Lewises operated their dog boarding and handling business from the 9811 Premises without a boarding kennel permit required by Pierce County, Ch. 5.24 PCC.

39. The Lewises operated their dog boarding and handling business on the 9811 Premises in violation of White Water Estates CCR, Article III, § 2 for Icy was not a "house pet."

40. After the April 26, 2017 attack, Sammie confessed to Rogers that she had no

---

[1] While the rear of the property is fenced, it does not and did not prevent Thor from entering and accosting Icy as alleged.

**COMPLAINT - 5**

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

insurance to cover Icy's injuries (or those that might be suffered by of the other dozen and a half or more client dogs), that she was not permitted to operate her dog boarding and handling business from her home, and that the 9812 Dogs were aggressive and barked 24/7 at the property corner whenever the Lewises, their clients' dogs, or their personal dogs were out, or the Lewises had visitors. Sammie added that Watkins constantly yelled at the 9812 Dogs when driving in and out of the perimeter gate to try to keep them contained but that Sammie would not complain, in order to keep the peace.

41. The Lewises and TSL did not have commercial, homeowners, or renters liability insurance to cover the injuries arising from the incident described herein. Their Homesite policy disclaimed coverage due to the business exclusion.

42. Sammie and TSL engaged in several unfair and deceptive practices in trade and commerce, proximately injuring Rogers and Icy, including but not limited to (a) representing that the dog boarding and handling business was insured at the 9811 Premises; (b) implying that the dog boarding and handling business was properly licensed with the State and County; (c) implying that the dog boarding and handling business was allowed to operate at the 9811 Premises and not in violation of the White Water Estate CCRs; and (d) implying that Icy would be supervised at all times and not let out into an uncontrolled space accessible to known vicious dogs. Such practices had, and on information and belief may continue to have, the capacity to injure others.

43. On April 26, 2017, Icy was the #1 Australian Shepherd, All Breed, in the United States at AKC conformation events, up from #3 Australian Shepherd, All Breed, in 2016.

44. Rogers spent more than $100,000 in training, promoting, and campaigning Icy prior to April 26, 2017.

45. As a proximate result of the aforementioned attack, Icy's market value abruptly and sharply dropped as she was unable to compete in the May 2017 National Specialty Show and

**COMPLAINT - 6**

the first National Top 20 Competition. With no wins, her national standing dropped and show momentum vanished. Icy's unique status as a multi BIS/BISS-winning competitor faltered. She lost visibility before well-respected American and foreign judges, who knew her by name. As a proximate result of the aforementioned attack, Icy's show career ended, resulting in significant depreciation in Icy's value.

46. Rogers lost Icy's utility and suffered a loss of her value.

**Per CR 8(e)(2), Ms. Rogers alternatively and cumulatively pleads the following against Watkins and Eyer:**

**Claim I:** RCW 16.08.010

**Claim II:** Strict Common Law Liability

**Claim III:** Negligence

**Claim IV:** Property Damage

**Per CR 8(e)(2), Ms. Rogers alternatively and cumulatively pleads the following against the Lewises and TSL:**

**Claim I:** Breach of Bailment

**Claim II:** Breach of Contract

**Claim III:** Negligence

**Claim IV:** RCW 16.08.010

**Claim V:** Consumer Protection Act (RCW 19.86.090)

## PRAYER

WHEREFORE, Ms. Rogers seeks joint and several liability against the Defendants as follows:

A. For economic damages related to the diminished value of Icy, loss of use of Icy and veterinary expenses;

B. For actual, consequential, incidental, expectation, and reliance damages;

C. For prejudgment interest on liquidated sums;

COMPLAINT - 7

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

D. For reasonable attorney's fees as allowed by law or equity, including but not limited to RCW 16.08.010 and RCW 19.86.090;

E. For treble damages up to $25,000 under RCW 19.86.090;

F. For costs of suit;

G. For postjudgment interest at 12% per annum or the highest rate permitted by law, whichever is higher, pursuant to RCW 4.56.110;

H. For such other and further relief as the Court may deem just and proper.

I. NOTICE: Ms. Rogers seeks damages in excess of the statutory fee-shifting limit set by RCW 4.84.250-.280, as amended.

Dated this February 12, 2019

ANIMAL LAW OFFICES

_____
Adam P. Karp, WSBA No. 28622
*Attorney for Plaintiff*

COMPLAINT - 8

Animal Law Offices of
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

## Pierce County Superior Court Civil Case 19-2-05359-9

| | |
|---|---|
| Case Title: | PATRICIA ROGERS VS. SAMMIE LEWIS |
| Case Type: | Tort - Other |
| Access: | Public |
| Track Assignment: | Complex |
| Jury Size: | |
| Estimated Trial Length: | |
| Dept Judge: | **14 SUSAN K. SERKO** |
| Resolution: | |
| Completion: | |

### Litigants

| Name | Type | Status |
|---|---|---|
| **PATRICIA ROGERS** | Plaintiff | |

| Attorney for PATRICIA ROGERS | Type | Bar Number |
|---|---|---|
| **ADAM PHILLIP KARP** | Atty for Plaintiff/Petitioner | 28622 |

| Name | Type |
|---|---|
| **SAMMIE LEWIS** | Defendant |
| **TREVOR LEWIS** | Defendant |
| **LISA EYER** | Defendant |
| **JEFFERY EYER** | Defendant |
| **TSL HANDLING & MULTIMEDIA** | Defendant |

### Filings

| Filing Date | Filing | Access | Pages | Microfilm |
|---|---|---|---|---|
| 02/12/2019 | FILING FEE RECEIVED $240.00 | Public | 0 | |

 **PURCHASE COPIES**

### Proceedings

| Date | Calendar | | Outcome |
|---|---|---|---|
| 07/21/2020 | DEPT 14 - JUDGE SERKO (Rm. 533 ) | | |
| WORKINGCOPY | Unconfirmed | 12:00 Pretrial Conference | |
| 08/11/2020 | DEPT 14 - JUDGE SERKO (Rm. 533 ) | | |
| WORKINGCOPY | Confirmed | 9:00 Trial | |

### Original Case Schedule Items

| Event | Schedule Date |
|---|---|
| Confirmation of Service | 03/26/2019 |
| Confirmation of Joinder of Parties, Claims and Defenses | 08/13/2019 |
| Jury Demand | 08/20/2019 |
| Plaintiff's/Petitioner's Disclosure of Primary Witnesses | 11/05/2019 |
| Defendant's/Respondent's Disclosure of Primary Witnesses | 12/03/2019 |
| Disclosure of Rebuttal Witnesses | 03/17/2020 |
| Deadline for Filing Motion to Adjust Trial Date | 04/07/2020 |
| Discovery Cutoff | 05/26/2020 |
| Exchange of Witness and Exhibit Lists and Documentary Exhibits | 06/16/2020 |
| Joint Statement of Evidence | 06/30/2020 |
| Deadline to file Certificate or Declaration re: Alternative Dispute Resolution | 06/30/2020 |
| Deadline for Hearing Dispositive Pretrial Motions | 06/30/2020 |
| Pretrial Conference | 07/21/2020 |
| Trial | 08/11/2020 |

### Judgments

| Cause # | Status | Signed | Effective | Filed |
|---|---|---|---|---|

This calendar lists Confirmed and Unconfirmed Proceedings. Attorneys may **obtain access rights** to confirm/strike selected proceedings. Currently, any proceedings for the Commissioners' calendars can be stricken, but only Show Cause proceedings for the Commissioners' calendars can be confirmed.

Unconfirmed Proceedings will not be heard unless confirmed as required by **the Local Rules of the Superior Court for Pierce County** .

- Hearing and location information displayed in this calendar is subject to change without notice. Any changes to this information after the creation date and time may not display in current version.
- Confidential cases and Juvenile Offender proceeding information is not displayed on this calendar. Confidential case types are: Adoption, Paternity, Involuntary Commitment, Dependency, and Truancy.
- The names provided in this calendar cannot be associated with any particular individuals without individual case research.
- Neither the court nor clerk makes any representation as to the accuracy and completeness of the data except for court purposes.

Created: Tuesday February 12, 2019 3:42PM



Privacy Policy
Copyright Notices